UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NEIL W. BADEJO,

          Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

          Defendant.

CASE NO.    C08-5658RJB-KLS

REPORT AND
RECOMMENDATION

Noted for October 16, 2009

This matter has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  This matter is before the Court on plaintiff's motion for attorney fees, costs and expenses pursuant to 28 U.S.C. §2412, The Equal Access to Justice Act ("EAJA"). (Dkt. #18).  After reviewing plaintiff's motion and the remaining record, including defendant's response thereto (Dkt. #20) and plaintiff's reply (Dkt. #21), the undersigned submits the following report and recommendation for the Court's review.

PROCEDURAL BACKGROUND

In his motion, plaintiff requests pursuant to the EAJA, attorney fees in the amount of $5,244.58, costs in the amount of $350.00 and expenses in the amount of $21.23, subject to the amendment thereof

1   for any additional time expended in the event of defendant's opposition to the motion. The proposed

2   order awarding attorney fees, costs and expenses plaintiff submitted with his motion, provides that those

3   fees, costs and expenses are to be awarded to plaintiff's attorney. (Dkt. #18-4). Defendant does not object

4   to the amount of fees, costs and expenses requested, but does oppose the language in the proposed order

5   directing payment to plaintiff's attorney. (Dkt. #20).

6       First, defendant asserts that costs are properly awarded pursuant to 28 U.S.C. § 1920, and not the

7   EAJA. Second, defendant argues that as the "prevailing party" under the EAJA, attorney fees must be

8   awarded directly to plaintiff. Nevertheless, defendant requests that because plaintiff, in a declaration he

9   submitted to this Court, authorized the United States government to pay attorney fees awarded thereunder

10  "directly" to his attorney, the Court award in light of this "apparent assignment," the EAJA fees, costs

11  and expenses he seeks to him, but have them "made payable to, and mailed directly to" his attorney. (Dkt.

12  #5; Dkt. #20, p. 2; Dkt. #20-2).

13      Plaintiff, in his reply, disputes the validity of defendant's argument that EAJA attorney fees, when

14  awarded, belong to the disability claimant rather than to the claimant's attorney. Plaintiff asserts that this

15  position is logically inconsistent with the purpose of the EAJA, that disability claimants are not eligible to

16  actually received EAJA funds when awarded, that those funds are awarded only when disability claimants

17  are represented by counsel and must be used to pay such counsel, and that awarding EAJA attorney fees

18  to disability claimants would deter attorneys from representing them. Plaintiff argues as well that because

19  such attorney fees must be awarded to the claimant's attorney, they may not be offset by the government

20  to cover other debts owed by the claimant.

21      As noted above, defendant has filed his response to plaintiff's motion and plaintiff has filed a

22  reply thereto. Accordingly, this matter is now ripe for consideration by the Court. For the reasons set

23  forth below, the undersigned finds that the attorney fees, costs and expenses requested by plaintiff should

24  be awarded directly to him, rather than his attorney, and that to the extent plaintiff may owe the

25  government a debt, those fees, costs and expenses can be offset thereby.

26                                          DISCUSSION

27  I.    Standard of Review

28        The EAJA reads in relevant part:

            Except as otherwise specifically provided by statute, a court shall award to a

prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). As conceded by defendant, there is no issue in this case regarding whether the position of the United States was "substantially justified," or that "special circumstances" make an award under the EAJA unjust here. Accordingly, the question before the Court is not whether an award of fees, costs and expenses should be made, but rather to whom they should be directed.

As noted above, section 2412(d)(1)(A) states expressly that such fees, costs[1] and expenses shall be awarded to the "prevailing party." The term "prevailing party" is defined by the EAJA as "a party who obtains a final judgment (other than by settlement)." 28 U.S.C. § 2412(d)(2)(H). The term "party" means in relevant part "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B). Despite this seemingly plain language regarding who is the prevailing party, and thus to whom an award of fees, costs and expenses should be made, there is a significant split among the courts as to whether the "prevailing party" is actually the party who initiated the lawsuit against the government and obtained a final judgment, or whether it more correctly applies to what some courts have found to be the real party in interest here, namely the prevailing party's attorney.

The undersigned believes the former approach is more correct, in light of the plain language of the 28 U.S.C. § 2412(d)(1)(A), the legislative history of the EAJA, the Supreme Court's consistent treatment of similar fee-shifting provisions in other federal statutes, and – given that the Ninth Circuit has yet to squarely address this issue – the sound reasoning of other circuit and district courts that have done so. "As in all statutory construction cases," the Court's inquiry begins with the actual language of the statute at issue here. Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 450 (2002). In this case, this means the Court first must determine whether that language "has a plain and unambiguous meaning with regard to"

---

[1] Also as noted above, defendant argues that costs are properly awarded pursuant to 28 U.S.C. § 1920. Defendant is only partly correct. Section 2412(d)(1)(A), as just seen, allows for an award of "fees and other expenses, in addition to any costs awarded pursuant to" 28 U.S.C. 2412(a). Section 2412(a)(1), in turn, provides in relevant part that "[e]xcept as otherwise specifically provided by statute, a judgment for costs, as enumerated in" 28 U.S.C. § 1920, "but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought . . . against the United States or any agency or any official" thereof. As indicated, 28 U.S.C. § 1920 merely enumerates the types of costs that may be awarded under the EAJA. Accordingly, while 28 U.S.C. § 1920 does come into play in determining the costs to be awarded the prevailing party, it is pursuant to 28 U.S.C. § 2412 that such costs actually are awarded.

REPORT AND RECOMMENDATION
Page - 3

the term "prevailing party" employed in section 2412(d)(1)(A). <u>Robinson v. Shell Oil Co.</u>, 519 U.S. 337, 340 (1997). "The starting point in discerning congressional intent" regarding that term, therefore, "is the existing statutory text." <u>Lamie v. United States Trustee</u>, 540 U.S. 526, 534 (2004).

In construing statutory language, given a "straightforward statutory command, there is no reason to" go beyond the plain text thereof, including resorting to legislative history. <u>United States v. Gonzales</u>, 520 U.S. 1, 6 (1997); <u>see also</u> <u>Connecticut National Bank v. Germain</u>, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). This canon of construction is the "cardinal canon" to which courts "should always turn first . . . before all others," and "[w]hen the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" <u>Connecticut Nat. Bank</u>, 503 U.S. at 253-54 (quoting <u>Rubin v. United States</u>, 449 U.S. 424, 430 (1981). A court, therefore, should decline to enmesh itself "in an analysis of legislative history," if "the statute is unequivocally clear on its face." <u>United States v. Newsome</u>, 898 F.2d 119, 121 (10th Cir. 1990); <u>see also</u> <u>Barnhart v. Walton</u>, 535 U.S. 212, 217 (2002) (if statute speaks clearly to precise question at issue, courts must give effect to unambiguously expressed intent of Congress).

"The plainness or ambiguity of statutory language," however, not only "is determined by reference to the language itself," but "the specific context in which that language is used, and the broader context of the statute as a whole." <u>Robinson</u>, 519 U.S. at 341. Accordingly, the Court's "inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" <u>Id.</u> (quoting <u>United States v. Ron Pair Enterprises, Inc.</u>, 489 U.S. 235, 240 (1989)). This last requirement recognizes, for example, that a statutory provision, which "may seem ambiguous in isolation," often can be "clarified by the remainder of the statutory scheme," because "the same terminology" may be "used elsewhere in a context that makes its meaning clear." <u>Smith v. United States</u>, 508 U.S. 223, 233 (1993) (quoting <u>United Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd.</u>, 484 U.S. 365, 371 (1988)). Along those lines, "[a] term appearing in several places in a statutory text is generally read the same way each time it appears." <u>Ratzlaf v. United States</u>, 510 U.S. 135, 143 (1994).

It is only "in rare circumstances," however, that "a statute which is clear and unambiguous on its face" will not "be given effect according to its plain meaning." <u>United States v. O'Brien</u>, 686 F.2d 850, 852 (10th Cir. 1982). Such happens when "a statute's plain meaning 'produces an absurd, and perhaps

unconstitutional, result.'" <u>Mattel, Inc. v. MCA Records, Inc.</u>, 296 F.3d 894, 905 (9th Cir. 2002) (quoting

<u>Green v. Bock Laundry Mach. Co.</u>, 490 U.S. 504, 527 (1989) (Scalia, J., concurring)); <u>see also</u> <u>Lamie</u>,

540 U.S. at 534; <u>Hartford Underwriters Insurance Co. v. Union Planters Bank</u>, 530 U.S. 1, 6 (2000);

<u>Haggar Co. v. Helvering</u>, 308 U.S. 389 (1940) (literal reading leading to absurd results is to be avoided if

statutory language can be given reasonable application consistent with its words and legislative purpose).

Only then is it "'appropriate to consult all public materials," including legislative history. <u>Mattel</u>, 296

F.3d at 905 (quoting <u>Green</u>, 490 U.S. at 527). The "absurd results," though, must be "'so gross as to

shock the general moral or common sense[; a]nd there must be something to make plain the intent of

Congress that the letter of the statute is not to prevail.'" <u>Newsome</u>, 898 F.2d at 121 n.3 (quoting <u>Crooks v.</u>

<u>Harrelson</u>, 282 U.S. 55, 60 (1930)).

As set forth above, the EAJA provides in relevant part that "'a court shall award to a *prevailing*

*party* . . . fees and other expenses . . . *incurred by that party* in any civil action.'" <u>Manning v. Astrue</u>, 510

F.3d 1246, 1249 (10th Cir. 2007) (quoting 28 U.S.C. § 2412(d)(1)(A)) (emphasis added by court of

appeals). At least four circuit courts of appeals have found this language "clearly provides that the

prevailing party, who incurred the attorney's fees, and not that party's attorney, is eligible for an award

of" such fees. <u>Id.</u> at 1249-50; <u>see also</u> <u>Stephens v. Astrue</u>, 565 F.3d 131, 137 (4th Cir. 2009); <u>Reeves v.</u>

<u>Astrue</u>, 526 F.3d 732, 735 (11th Cir. 2008); <u>Phillips v. General Services Admin.</u>, 924 F.2d 1577, 1582

(Fed. Cir. 1991). As such, those courts have held that "attorney's fees under the EAJA are payable to the

claimant, not the attorney. <u>Stephens</u>, 565 F.3d at 137 ("In reaching this conclusion we begin, and end,

with the plain language of § 2412(d)(1)(A), which provides that the fees may be awarded to a 'prevailing

party.'"); <u>see also</u> <u>Reeves</u>, 526 F.3d at 735 (explicit reference in § 2412(d)(1)(A) to "prevailing party"

unambiguously directs award of attorney's fees to party who incurred those fees and not to that party's

attorney); <u>Phillips</u>, 924 F.2d at 1582 ("As the statute requires, any fee award is made to the 'prevailing

party,' not the attorney.").

The undersigned agrees with these circuit courts that the explicit reference to "prevailing party" in

the fee-shifting provision of the EAJA clearly directs the award of attorney fees to the party, and not that

party's attorney. "[T]he plain language of a statute" is to be given its "'ordinary, contemporary, common

meaning, absent an indication Congress intended [it] to bear some different import." <u>Stephens</u>, 565 F.3d

at 137. Statutory language is ambiguous if "it is capable of being understood by reasonably well-

informed persons in two or more different senses." McGraw v. Barnhart, 450 F.3d 493, 498 (10th Cir. 2006). Such is not the case with section 2412(d)(1)(A), as noted by the Fourth Circuit in Stephens:

> . . . [T]he plain language of § 2412(d)(1)(A) . . .

> . . . "clearly provides that the prevailing party, who incurred the attorney's fees, and not that party's attorney, is eligible for an award of attorney's fees." *Manning*, 510 F.3d at 1249-50. The EAJA offers a specific definition of "prevailing party" tied to an individual's, not an attorney's net worth. *Id.* at 1251. The EAJA also requires the "party," not the "attorney," to submit an itemized statement for any "award of fees and other expenses." 28 U.S.C.A. § 2412(d)(1)(B). Finally, in defining "fees and other expenses," the EAJA lumps attorney's fees with a variety of other costs, including "the reasonable expenses of expert witnesses, [and] the reasonable cost of any study, analysis, engineering report, test, or project." *Id.* § 2412(d)(2)(A). These provisions clarify that "[t]he EAJA . . . was not enacted for the benefit of counsel to ensure that counsel gets paid." *Manning*, 510 F.3d at 1251; *see also Reeves*, 526 F.3d at 736 (noting "the structure of the statute demonstrates Congress did not intend all service providers to become additional parties to the action for the purpose of asserting their claims for compensation.").

565 F.3d at 137-38; Manning, 510 F.3d at 1251; see also Chonko v. Commissioner of Social Security Admin., 2008 WL 1809188 *4 (D.N.J. 2008) (most natural interpretation of term "prevailing party" is that it refers to litigant herself, not her attorney).

"In addition to the 'prevailing party' language," therefore, "other parts of the EAJA," as succinctly described by the Fourth Circuit, "'affirmatively rule out the attorney as a recognized applicant for fees and expenses," and, as such, the language of the EAJA "permits attorney's fees reimbursement to financially eligible prevailing parties, who make a proper application, and not to their attorneys." Manning, 510 F.3d at 1251 (citing to and quoting same statutory text as did Fourth Circuit in Stephens); see also Reeves, 526 F.3d at 736 (noting same statutory provisions within 28 U.S.C. § 2412, in addition to express reference to "prevailing party," rule out party's attorney as prevailing party); Panola Land Buying Ass'n v. Clark, 844 F.2d 1506, 1511 (11th Cir. 1988) (same).[2] "Several additional considerations",

---

[2] One district court has pointed to the "Savings Provision" – an uncodified portion of the EAJA added in 1985 – as casting "doubt on the certitude" expressed by other courts "that the use of 'prevailing party' in § 2412(d)(1)(A) permits payment of attorney's fees only to the actual party." Quade v. Barnhart, 570 F.Supp.2d 1164, 1170-71 (D.Ariz. 2008) (finding Savings Provision thus allowed it to reach beyond bare language of statute to effect Congressional intent); see also Manning, 510 F.3d at 1251. The Savings Provision provides in relevant part:

> Section 206(b) of the Social Security Act [28 U.S.C. § 406(b) ("another avenue for collecting attorney's fees within the Social Security Act")] . . . shall not prevent an award of fees and other expenses under section 2412(d) of title 28, United States Code . . . Section 206(b)(2) of the Social Security Act . . . shall not apply with respect to any such award but only if, where the *claimant's attorney receives* fees for the same work under both section 206(b) of the [Social Security] Act . . . and section 2412(b) of title 28, United States Code . . . , the claimant's attorney refunds to the claimant the amount of the smaller fees.

Id. at 1170 (quoting Equal Access to Justice Act, Section 206 of Pub.L. 96-481, as amended by Pub.L. 99-80, § 3, Aug. 5, 1985, 99 Stat. 186) (emphasis added by Arizona district court); Reeves, 526 F.3d at 736. Thus, "[t]he Savings Provision directs the attorney to refund to her client the lesser of her fee awards, if she is awarded fees for the same work under both the EAJA and the Social Security Act." Id. The Quade court concluded that this provision "undermine[s] the 'coheren[ce] and consist[ency] of the statutory scheme," in which the term "prevailing party" in section 2412(d)(1)(A) is read as meaning the party, and not that party's attorney. Id. at 1170-71 (quoting Robinson, 319 U.S. at 340). In so concluding, the district court noted with favor the plaintiff's argument in that case that "[i]f the attorney was not the recipient of both awards" under the Savings Provision, "the attorney would not be in the position to refund the lesser fee amount to the claimant. Id. at 1170. "It follows then," the argument continued, "that the Savings Provision would be superfluous if the recipient of the attorney's fees was the actual party rather than the attorney," and thus "[t]he Savings Provision anticipates that the attorney will directly receive" the award under both the EAJA and section 406(b). Id.

     The Savings Provision "by its own terms," however, "only comes into play after the attorney actually *receives* double fees for the same work." Reeves, 526 F.3d at 737 ("When an attorney actually receives the proceeds of an EAJA award from his client, the clause is implicated.") (emphasis in original); see also Stephens, 565 F.3d at 139. As the Tenth Circuit has stated:

> This section . . . refers to the fact that the attorney must return to the claimant the smaller of the two fee awards under the EAJA or under 42 U.S.C. § 406(b)(1). It does not state that the attorney is entitled to receive the full amount of the EAJA fees awarded. Rather, the purpose is to ensure that the attorney does not receive double compensation.

Manning, 510 F.3d at 1251. "It does not presuppose that attorney's fees under the EAJA are directly payable to the attorney, but merely rests on the 'uncontroversial proposition that Congress anticipated attorneys will often be the ultimate beneficiaries of the attorney's fees awarded under the EAJA.'" Stephens, 565 F.3d at 139 (quoting Reeves, 526 F.3d at 737). Indeed, as noted above "[w]hile the EAJA provides that fees are to be provided to the 'prevailing party,' § 406(b) of the Social Security Act specifically authorizes payment of attorney's fees to 'such attorney.'" Stephens, 565 F.3d at 138; see also Manning, 510 F.3d at 1252 ("[U]nlike the EAJA, § 406 expressly provides for payment to the attorney."). This "continued use of different language" in the two statutory provisions "is particularly telling," furthermore, "because Congress has specifically acted to harmonize the EAJA with the Social Security Act through the Savings Provision but 'has not substantially amended § 406(b) since enacting the EAJA.'" Stephens, 565 F.3d at 138 (quoting Manning, 510 F.3d at 1252). As further succinctly summarized in another opinion from the District Court of the District of New Jersey:

> . . . The Savings Provision does not directly discuss the proper recipient of an EAJA award. It merely describes situations in which an attorney "receives" fees – without mention of whether the receipt is directly from the court or indirectly through a litigant – and requires the attorney in certain situations to "refund" those fees to the claimant. This language stands in contrast to § 2412, which directly discusses the proper recipient of EAJA fee wards, stating that fees shall be awarded "to the prevailing party." Moreover, the Savings Provision's use of the verb "refund" suggest[s], if anything, that the lawyer receives fees from the claimant, to whom he must "refund" the fees in certain situations. *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 981 (10th ed. 2002) (defining the term "refund" as "to give or put back" or "to return (money) in restitution, repayment, or balancing of accounts"). Once cannot "refund" money to a person unless one has already received money from that person. Thus the Savings Provision does not weaken the textual analysis.

Chonko, 2008 WL 1809188 at *6 (internal footnote omitted). As the Chonko court further noted:

> This [dictionary] definition of "refund" – the only reasonable definition of which the Court is aware – cannot hold consistently in the Savings Provision. Courts undoubtedly award fees under § 406 directly to attorneys . . . , in which circumstance it makes little sense that the Saving[s Provision] may then require attorneys to "refund" those fees to claimants, who never possessed the fees in the first place. This textual inconsistency serves to further underscore that the Savings Provision language is ambiguous with respect to the initial recipient of attorney's fees.

Id. at n. 6. While in yet another opinion, the New Jersey district court found "[t]his refund requirement can be seen as 'implicitly recogniz[ing] that the attorney is the proper payee of the EAJA fees,' therefore creating ambiguity within the EAJA's statutory scheme," the undersigned finds the reasoning of the district court in Chonko and the other circuit courts discussed above, and their

REPORT AND RECOMMENDATION

furthermore, "bolster" the conclusions reached by these courts. <u>Stephens</u>, 565 F.3d at 138.

First, Congress has demonstrated "it 'knows what language to use to award attorney's fees to an attorney and what language to use when it chooses to award the fees to the prevailing party.'" <u>Id.</u> (quoting <u>Manning</u>, 510 F.3d at 1252). For example, "[w]hile the EAJA provides that fees are to be provided to the 'prevailing party,'" Congress used "different language" in 42 U.S.C. § 406(b) to "specifically" authorize "payment of attorney's fees to 'such attorney.'" <u>Id.</u>; <u>Reeves</u>, 526 F.3d at 736.[3] Further, as discussed above, "the structure of the statute demonstrates Congress did not intend all service providers," including attorneys for prevailing parties, "to become additional parties to the action for the purpose of asserting their claims for compensation." <u>Reeves</u>, 526 F.3d at 736 (finding it equally implausible that Congress intended EAJA fees to be awarded directly to each service provider on individual basis) (citing 28 U.S.C. § 2412(d)(1)(B), which requires prevailing party to submit fee application with itemized statement from attorney detailing time spent and rates charged).

In addition, it is "settled law that the attorney does not have standing to apply for the EAJA fees," but rather "that right belongs to the prevailing party." <u>Manning</u>, 510 F.3d at 1252 (citing <u>Oguachuba v. Immigration and Naturalizaton Serv.</u>, 706 F.2d 93, 97-98 (2nd Cir. 1983); <u>see also</u> <u>Stephens</u>, 565 F.3d at 138; <u>Panola Land Buying Ass'n</u>, 844 F.2d 1509. "Just as a prevailing party cannot assign her underlying substantive action," therefore, "she cannot assign her right to seek attorney's fees, which is derivative of the underlying substantive action, to her attorney." <u>Manning</u>, 510 F.3d at 1252. "Only after the prevailing party exercises her right to seek an award of attorney's fees under the EAJA and obtains an award may her attorney pursue collection of the attorney's fees." <u>Id.</u>

reading of the language of the Savings Provision, to be more persuasive on this issue. <u>Williams v. Commissioner of Social Security</u>, 549 F.Supp.2d 613, 616 n. 4 (D.N.J. 2008) (citations omitted).

[3]As further explained by the Eleventh Circuit:

The text of this provision [42 U.S.C. § 406(b)] stands in stark contrast to the prevailing party language of the EAJA. Section 406(b) provides that whenever a court renders a favorable judgment to a claimant it may allow a reasonable attorney fee, and the Commissioner [of the Social Security Administration] may "certify the amount of such fee for payment *to such attorney*" out of the claimants' past-due benefits. *Id.* § 406(b)(1)(A) (emphasis added).

<u>Id.</u> The Eleventh Circuit went on to note, as did the Tenth Circuit, that "Congress knows what language to use to award attorney's fees to an attorney and what language to use when it chooses to award" such fees "to the prevailing party," and that while "Congress could have worded the EAJA statute to award attorney's fees to the attorney, . . . it did not do so." <u>Id.</u> (quoting <u>Manning</u>, 510 F.3d at 1252).

"The statutory framework chosen by Congress to accomplish" the EAJA's goals– which shall be discussed in greater detail below – "authorizes the courts to award attorney fees and expenses of attorneys against the United States, 'to the same extent that any other party would be liable under the common law or any statute.'" Panola Land Buying Ass'n, 844 F.2d at 1510. The Eleventh Circuit went on to explain:

> In employing the "prevailing party" language, Congress recognized that throughout our history litigation costs generally have been awarded to the prevailing party. Over the years attorneys for prevailing parties have not paid the costs of their clients' litigation and they have not petitioned in their own rights for the costs of litigation.

Id. (internal footnote omitted). Indeed, "practically every statute that provides for attorneys' fees to the prevailing party grants the award directly to the party and not the party's counsel." McCarty v. Astrue, 505 F.Supp.2d 624, 629 (N.D.Cal. 2007).

"The term 'prevailing party,' as found in the EAJA and other fee-shifting statutes," furthermore, "is to be interpreted consistently with the law that has been developed defining that term." Id.; McQuiston v. Marsh, 790 F.2d 798, 800 (9th Cir. 1986). The Supreme Court also has interpreted consistently the "fee-shifting provisions" of numerous federal statutes in which "Congress . . . has authorized the award of attorney's fees to the 'prevailing party.'" Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human Serv., 532 U.S. 598, 602-03 and n.4 (2001) (citations omitted); see also Independent Federation of Flight Attendants v. Zipes, 491 U.S. 754, 758 n.2 (1989) ("[F]ee-shifting statutes' similar language is 'a strong indication' that they are to be interpreted alike.") (citation omitted).

Congress has "employed the term 'prevailing party'" so as to designate "those parties eligible for an award of litigation costs." Buckhannon, 532 U.S. at 603. The Supreme Court has interpreted the term "prevailing party" to mean "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded," that is, "[the] *successful party*." Id. (quoting Black's Law Dictionary 1145 (7th ed. 1999) (emphasis in original). "This view . . . can be distilled from" the Supreme Court's "prior cases" as well. Id.; see also United States v. McPeck, 910 F.2d 509, 513 (8th Cir. 1990) ("When a statute awards attorneys' fees to a party, the award belongs to the party, not the attorney representing the party."); Virani v. Jerry M. Lewis Truck Parts & Equipment, 89 F.3d 574, 577 (9th Cir. 1996) (in general, statutes bestow fees upon parties, not attorneys).

As noted by the Eleventh Circuit back in 1988, "[p]ractically all" the "over 130 statutory grants of authority having to do with particular types of litigation" Congress had enacted at the time, conferred "the

right to recover attorneys' fees upon the parties themselves, rather than upon the attorneys." <u>Panola Land Buying Ass'n</u>, 844 F.2d at 1510.  "[S]uch fee provisions were enacted for the benefit of the persons the statutes are designed to reach," i. e., the prevailing parties themselves, and not their counsel.[4]  <u>Id.</u> at 1511.  Indeed, the Supreme Court specifically has found this to be so in regard to EAJA attorney fees sought by parties in the Social Security context.  <u>See</u> <u>Gisbrecht v. Barnhart</u>, 535 U.S. 789, 796 (2002) ("Under [the] EAJA, a party prevailing against the United States in court, *including a successful Social Security benefits claimant*, may be awarded fees payable by the United States") (emphasis added).

The language of other federal fee-shifting statutory provisions thus are instructive in discerning the meaning of the term "prevailing party" as employed in the EAJA.  One such provision, 42 U.S.C. § 1988, which allows for an award of attorney fees in the context of civil rights litigation,[5] "makes the prevailing *party* eligible for a discretionary award of" such fees as well.  <u>Venegas v. Mitchell</u>, 495 U.S. 82, 87 (1990) ("[I]t is the party, rather than the lawyer, who is so eligible.") (emphasis in original); <u>see also</u> <u>Stephens</u>, 565 F.3d at 138 (Supreme Court repeatedly has indicated § 1988 fees run to party, not attorney); <u>Pony v. County of Los Angeles</u>, 433 F.3d 1138, 1142 (9th Cir. 2006) (§ 1988 vests right to seek attorney fees in prevailing party, not that party's attorney, and attorney lacks standing to pursue them) (citing <u>Evans v. Jeff D.</u>, 475 U.S. 717, 730-32 (1986)); <u>Gilbrook v. City of Westminster</u>, 177 F.3d 839, 872-74 (9th Cir. 1999) (section 1988 attorney fees allowed to party, rather than to that party's lawyer).  The Supreme Court even "has explicitly held that the standards governing the interpretation of § 1988's language" are "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'"  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 n.7 (1983); <u>Chonko</u>, 2008 WL 1809188 at *7; <u>see also</u> <u>Manning</u>, 510 F.3d at 1252 (legal principles from § 1988 cases apply to EAJA cases).[6]

---

[4]As the Eleventh Circuit observed, "[i]t has not been unusual for those of us in the legal profession to consider that such fee provisions were enacted for the benefit of the Bar, but that is not the case." <u>Id.</u>  Rather, those provisions "proceed from the assumption that the wealth of the party shall not determine the party's capability to enforce the rights conferred by the statute." <u>Id.</u>

[5]"Section 1988 states in pertinent part that '[i]n any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.'" <u>Venegas v. Mitchell</u>, 495 U.S. 82, 86 (1990).

[6]Two district courts have taken the position that section 1988 provides little guidance on the issue of to whom an award of EAJA fees should be paid.  In <u>Williams</u>, the New Jersey district court declined to find the Supreme Court's holding in <u>Evans</u> – that under section 1988 "the right to seek attorney's fees ('eligibility') belongs to the prevailing party" – "casts no light on the issue" of "to whom attorney's fees should be directed, once sought by the prevailing party." <u>Williams</u>, 549 F.Supp.2d at 620 (citing <u>Evans</u>, 475 U.S. at 728, 730-32).  The <u>Williams</u> court found other cases – such as <u>Venegas</u> with respect to section 1988, and <u>Panola</u>, <u>Oguachuba</u> and <u>Phillips</u> in regard to the EAJA – also dealt only with "who has the right to seek fees, and not who is the proper

REPORT AND RECOMMENDATION

Page - 10

Although, as discussed above, the plain language of the EAJA and the consistent manner in which the courts have interpreted the term "prevailing party" in other fee-shifting statutory provisions establish that EAJA fees, costs and expenses are to be awarded to the prevailing party – and thus the Court need

recipient of the award once sought." 549 F.Supp.2d at 620-21; see also McMahon v. Astrue, 617 F.Supp.2d 869, 875 (D.Ariz. 2008) (Venegas says nothing about whether attorney fees sought and awarded to plaintiff, had to be paid directly thereto).

While on the surface the distinction made here by the New Jersey district court may have some appeal, it runs foul of one of the main tenets of statutory construction that "plain language" be given its "'ordinary, contemporary, common meaning, absent an indication Congress intended [it] to bear some different import." Stephens, 565 F.3d at 137. As noted above, § 2412(d)(1)(A) requires a court to "award" to the prevailing party fees, costs and expenses. The verb "award" means "[t]o grant by formal process or by judicial decree." Black's Law Dictionary (8th ed. 2004). Interpreting "award" to mean a prevailing party may seek or be found entitled to, but may not actually receive, what has been sought or granted, strains its ordinary, contemporary or common meaning. Why make an award of something, if the party entitled thereto cannot in fact get it. In addition, as discussed elsewhere herein, the legislative purpose behind the EAJA, as well as public policy concerns, support an interpretation of section 2412(d)(1)(A) that an award of fees, costs and expenses made thereunder, also includes payment thereof to the prevailing party.

The Arizona district court in McMahon also distinguished section 1988 from section 2412(d)(1)(A) on the following bases:

. . . [T]he main rationale behind awarding and directing attorney's fees to the plaintiff instead of his or her attorney under § 1988 is that 'as far as §1988 is concerned, it is the party's right to waive, settle, or negotiate that eligibility." Venegas, 495 U.S. at 88, 110 S.Ct. 1679. That rationale is not present here. A plaintiff seeking attorney's fees under § 2412(d)(1)(A) of the EAJA does not have the right to waive, settle, or negotiate that eligibility. . . . Unlike § 1988, which "controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer," Venegas, 495 U.S. at 88, 110 S.Ct. 1679, both §§ 2412(d)(1)(A) and 406(b) control what the prevailing plaintiff must pay his lawyer, which is necessarily measured by the "reasonable attorney's fee" standard.

617 F.Supp.2d at 876-77. These reasons too are unconvincing. First, the Supreme Court did not state the rationale for awarding attorney fees to the prevailing party under section 1988 was that party's right to waive, settle or negotiate his or her eligibility to receive those fees. Rather, the prevailing party may waive, settle or negotiate such eligibility *because* section 1988 "by its terms" authorizes courts to order defendants to pay that party "a reasonable attorney's fee." Venegas, 495 U.S. at 87-88 (noting merely that just as it is prevailing party, not attorney, who is eligible to receive award of attorney fees, so too it is that party's right to waive, settle or negotiate such eligibility). As the Supreme Court in Evans noted, "the language of" section 1988, "as well as its legislative history, indicates that Congress bestowed on the 'prevailing *party*' (generally plaintiffs) a statutory eligibility for a discretionary award of attorney's fees in specified civil rights actions.". 475 U.S. at 730 (internal footnotes omitted). The Evans court further noted that "[t]his straightforward reading of § 1988 accords with the view held by the majority of Courts of Appeals." Id. at 730 n. 19. Second, any distinction between section 1988 and the EAJA in regard to the amount of attorney fees award allowable, bears little relevance to the issue of to whom the fee award is to be made or paid. In other words, it is a distinction without a difference. Indeed, it may not even be a distinction at all, since, as just noted, the very language of section 1988 itself requires that such an award be "a reasonable attorney's fee" as well.

Lastly, the district court in McMahon distinguished section 1988 from section 2412(d)(1)(A) on the basis that while "civil rights lawyers can simply protect their interest in a fee award by executing contracts . . . this is not the case" with respect to awards made under the EAJA, in light of the possibility of administrative offset of such awards under the Debt Improvement Collection Act of 1996, discussed in further detail below. 617 F.Supp.2d at 877. As the McMahon court noted, "civil rights lawyers can protect their interest in a fee award simply by executing contracts." Gilbrook, 177 F.3d at 874; see also Venegas, 495 U.S. at 86-87 ("[T]here is nothing in . . . section [1988] to regulate what plaintiffs may or may not promise to pay their attorneys if they lose or if they win."); Pony, 433 F.3d at 1144 (current section 1988 jurisprudence holds that attorney is free to collect statutory attorney fees once client has exercised his or her rights by demanding them). Although, also as discussed in further detail below, the possibility of administrative offset is very real, that possibility again is insufficient to overcome the plain language of the EAJA or the legislative purpose and policies behind it, all of which support a finding that fee awards under that statute should be paid directly to the prevailing party, and not the attorney.

not look to legislative history or other policy considerations[7] – that history and those policies further support the view that such fees, costs and expenses do not go to the attorney.  As noted by the Eleventh Circuit, "[t]he primary purpose of the EAJA is to deter the government from bringing unfounded suits or engaging in unreasonable administrative behavior," which "is in part achieved by rectifying 'the disparity between the resources and expenditure of . . . individuals and their government." <u>Panola Land Buying Ass'n</u>, 844 F.2d at 1510 (quoting 5 U.S. Code Cong. & Admin. News 1980, pp. 4953, 4984).  As the congressional House Report just cited further states:

> Providing an award of fees to a prevailing party represents one way to improve citizen access to courts and administrative proceedings.  When there is an opportunity to recover costs, a party does not have to choose between acquiescing to an unreasonable Government order or prevailing to his financial detriment.  Thus, by allowing an award of reasonable fees and expenses against the Government when its action is not substantially justified, [the EAJA] provides individuals an effective legal or administrative remedy where none now exists.  By allowing a decision to contest Government action to be based on the merits of the case rather than the cost of litigating, [the EAJA] helps assure that administrative decisions reflect informed deliberation.  In so doing, fee-shifting becomes an instrument for curbing excessive regulation and the unreasonable exercise of Government authority.

<u>Id.</u> (quoting 5 U.S. Code Cong. & Admin. News 1980, p. 4991); <u>see also</u> <u>Commissioner, Immigration and Naturalization Serv. v. Jean</u>, 496 U.S. 154, 163 (1990) (EAJA's specific purpose is to eliminate financial disincentive to challenge unreasonable governmental actions).  This stated purpose of "removing financial obstacles to litigation to allow litigants to pursue action against the government . . . is consistent with granting the award directly to the prevailing party." <u>McCarty</u>, 505 F.Supp.2d at 630 (citing <u>Panola</u>, 844 F.2d at 1507-11); <u>see also</u> <u>FDL Technologies, Inc. v. United States</u>, 967 F.2d 1578, 1580 (Fed. Cir. 1992) (legislative history fully supports EAJA's plain meaning)[8]; <u>Sullivan v. Hudson</u>, 490 U.S. 877, 883 (1989) (EAJA designed to rectify concern that persons may be deterred from seeking review of, or defending against, unreasonable governmental action due to expense involved in securing vindication of their rights, by providing for award of reasonable attorney fees to "prevailing party").

---

[7]<u>See</u> <u>Stephens</u>, 565 F.3d at 139 (congressional general statements of findings and purpose cannot be used to override plain meaning of specific EAJA provisions); <u>Reeves</u>, 526 F.3d at 738 ("[P]olicy decisions are properly left to Congress, not the courts . . . '[w]hatever merits . . . policy arguments may have, it is not the province of [the courts] to rewrite the statute to accommodate them.'") (quoting <u>Artuz v. Bennett</u>, 531 U.S. 4, 10 (2000)).

[8]The Federal Circuit went on to note that this was so at least in part because that history "parrots the statute by stating that the United States is 'to pay attorney fees and other expenses *to a prevailing party* other than the United States.'" <u>Id.</u> (quoting H.R. CONF. REP. No. 1434, 96th Cong., 2d Sess. 21 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4953, 5003, 5010) (emphasis added by court of appeals).

Plaintiff's challenge to the view that EAJA fees, costs and expenses are to be awarded directly to the "prevailing party," rather than to that party's attorney, takes several tacks.  First, plaintiff asserts there is no situation in which a prevailing party – or, in Social Security cases, a disability claimant – may be eligible to actually receive those fees, costs and expenses.  As just discussed, though, not only has the Supreme Court interpreted the "prevailing party" language in the EAJA to mean just that, but so too have a large number of circuit and district courts.[9]  Perhaps what plaintiff really means here is that a prevailing party, once granted an award of fees, costs and expenses, has no legal right to keep them, but instead they ultimately redound to that party's attorney for services rendered.

Some courts do take the view, as plaintiff argues, that "[t]he issue 'is not whether [the prevailing party] is nominally to receive the money but whether ultimately it is to go to [his or] her attorney." Marré v. United States, 117 F.3d 297, 304 (5th Cir. 1997).  That is, "[t]hat the statute provides that attorneys' fees are to be awarded to the prevailing party is not controlling," but rather "the prevailing party is only nominally the person who receives the award; the real party in interest . . . are the attorneys themselves." Id.; see also Virani, 89 F.3d at 579 (attorney's fees awarded in *qui tam* action are for plaintiff's attorney, and must be directed thereto); Phillips, 924 F.2d at 1583 (stating in context of analyzing attorney fee agreement that EAJA does not contemplate that fee award may be made to party to be retained thereby); McMahon, 617 F.Supp.2d at 878 (while EAJA requires attorney fees to be awarded to prevailing party, such fees are to be directly paid to that party's attorney); Quade, 570 F.Supp.2d at 1169 (earned fees belong to attorney, not client); Williams, 549 F.Supp.2d at 621 (although EAJA attorney fees are awarded for prevailing party's benefit, they are not that party's to keep).

The undersigned finds, however, that while a fee award under the EAJA may, as discussed above, be for the purpose of enabling a party to obtain legal representation in challenging government action, this does not mean such awards are to be paid directly to the party's attorney.  Indeed, none of the decisions just cited provide a persuasive basis for holding otherwise.  First, neither Marré nor the cases on which it relied – though involving fee-shifting provisions in other federal statutes – engaged in any discussion as to, and indeed did not even address, the consistent interpretation of the term "prevailing party" applied by

---

[9]In addition to those courts discussed above, other courts, in unpublished decisions, also similarly have so interpreted this term. See, e.g., Hall v. Astrue, 272 Fed. Appx. 701, *702, 2008 WL 905218 **1 (10th Cir. 2008) Shinn v. Astrue, 2008 WL 2073980 *7 (E.D.Cal. 2008); Chonko, 2008 WL 1809188 at *4-*7; Vongphakdy v. Astrue, 2008 WL 650017 *2 (E.D.Pa. 2008).

the Supreme Court and majority of other courts discussed above. See 117 F.3d at 304 (citing Duncan v. United States Dept. of Army, 1989 WL 117742 *3 (4th Cir. 1989) and Plant v. Blazer Financial Services, Inc. of Ga., 598 F.2d 1357, 1366 (5th Cir. 1979)).  Nor did the Fifth Circuit appear to conduct any analysis of the legislative purposes behind the statute at issue in that case, which, as will be seen below, is different than those behind, and therefore warrants a different determination under, the EAJA and other similar fee-shifting statutes such as 42 U.S.C. § 1988.[10] Id.  As such, the undersigned finds the Fifth Circuit's holding in Marré to be of limited value in this case.

In Virani, which involved a *qui tam* action, the Ninth Circuit held that "only the plaintiff has the power to demand that the defendant pay the fees" of his or her attorney. 89 F.3d at 578 (unless and until plaintiff exercises that power, no one has right to collect fees from defendant, and defendant has no duty to pay them).  "Once the power is exercised, however, the attorneys' right vests, and the defendant's duty becomes fixed." Id.   The Ninth Circuit then went on to state that:

> . . . The work was done by and the fees are for the plaintiff's attorney.  They must be directed to the attorney.  Were the rule otherwise, plaintiffs would obtain possession of fee awards, and attorneys would be left to attempt to obtain the money for their services as best they could.  Left to the normal vicissitudes of life, substantial sums would be diverted from their intended purpose.  Actions of the client or of the client's creditors (or theirs) would often intervene.  That would not only thwart the Congressional purpose but would also make no sense at all and would lead to unconscionable results.

Id. at 579.  The Ninth Circuit, though, since has held that the "rationale in *Virani* does not apply to all federal fee-shifting statutes, and, in particular, does not apply to fee awards under § 1988," which, as

---

[10]The reasoning the Fifth Circuit employed in Marré for awarding attorney fees to the attorney rather than the party reads in relevant part as follows:

> Section 7430 provides that "the prevailing party may be awarded a judgment or a settlement for ... reasonable litigation costs incurred in connection with such court proceeding."  Under the statute, if the court decides to award attorneys' fees to the prevailing party, the fees are to be awarded *in addition to* any damages awarded to the prevailing party. In other words, the attorneys' fees are not awarded out of the prevailing party's damages, but rather are awarded on top of any damages the prevailing party receives.  Thus, damages and attorneys' fees under section 7430 are separate awards, the former going to the prevailing party and the latter to the prevailing party's attorneys. . . .

> That the statute provides that attorneys' fees are to be awarded to the prevailing party is not controlling. The issue "is not whether [the] plaintiff is nominally to receive the money but whether ultimately it is to go to her attorney or to be credited toward defendant in repayment of [the] plaintiff's debt." Here, . . . the prevailing party is only nominally the person who receives the award; the real party in interest vis-à-vis attorneys' fees awarded under the statute are the attorneys themselves.

Id. (internal citations and footnotes omitted).

discussed above, is another fee-shifting statute that, like the EAJA, employs the term "prevailing party,"

and which, also as discussed above, many courts have found should be interpreted consistently therewith.

Gilbrook, 177 F.3d at 874.  In so holding, the Ninth Circuit stated: in relevant part

> There are significant differences between a fee award under § 1988 and a fee award in a *qui tam* action.  First, the Supreme Court . . . has . . . with respect to fees under § 1988 . . . said unequivocally . . . Congress chose not to "bestow[ ] fee awards upon attorneys."  No policy argument and no Ninth Circuit case can override the Supreme Court's interpretation.
>
> Second, the functional difference between a civil rights claim and a *qui tam* action suggests that a different result is appropriate.  In the latter type of action, a substantial portion of the damages collected goes to the federal government, not to the *qui tam* plaintiff, as compensation for the acts of fraud committed by the defendant against the federal government.  Thus, as discussed in *Virani*, it is particularly important in *qui tam* actions that attorney fees actually go to the *qui tam* lawyer and not to the *qui tam* plaintiff.  If they did not, the government would be denied compensation to which it otherwise would be entitled.  That governmental-harm concern simply is not present in individual civil rights actions.
>
> Third, even if we were free to consider policy concerns, denying civil rights lawyers a direct payment of fee awards is consistent with § 1988's purpose of attracting competent counsel to represent civil rights plaintiffs. . . . [C]ivil rights lawyers can protect their interest in a fee award simply by executing contracts. . . .

Id. (internal citations omitted).  Given the consistency with which most courts have interpreted the same

"prevailing party" term in § 1988 and § 2412, and because the same rationale given by the Ninth Circuit

in Gilbrook applies equally to distinguish fee awards made to prevailing parties under the EAJA from

those successful plaintiffs receive in *qui tam* suits, Virani is inapplicable here as well.[11]

---

[11]At least one district court has declined to apply the holding in Gilbrook in the EAJA context, explaining in relevant part its basis for not doing so as follows:

> . . . It is tempting to analogize § 1988 and the EAJA because both statutes award fees to the "prevailing party."  *Compare* 42 U.S.C. § 1988(b) which permits the court to "allow the prevailing party . . . a reasonable attorney's fee." with 28 U.S.C. § 2412(d) which provides "a court shall award to a prevailing party . . . fees . . .".  Such a comparison, however, is an oversimplification of the two statutes. . . .
>
> The concern in analogizing § 1988 to the EAJA and employing § 1988 case law to interpret the EAJA is that these two statutes may serve fundamentally different purposes. Poor policy could result if they are interpreted in the same way with respect to payment of attorney fees. The Second Circuit addressed the differences between the EAJA as a federal fee-shifting statute and other civil rights fee-shifting statutes and held the EAJA was fundamentally different. *Oguachuba v. INS, et. al.*, 706 F.2d 93, 98-99 (2nd Cir.1983). The Second Circuit reasoned awards under civil rights fee-shifting statutes "are usually the result of Congress's perception of the importance of the underlying statutory policies, of the need to encourage litigation as a means of enforcement of those policies or of a desire to see that the damages awarded to plaintiffs in such cases are not diminished by the need to pay counsel." *Oguachuba*, 706 F.2d at 98-99. The EAJA, in the opinion of the Second Circuit, differs from civil rights fee-shifting statutes because the EAJA was not enacted to "enhance enforcement of affirmative governmental policies, but to deter the government from bringing unfounded suits or engaging in arbitrary or unjust administrative behavior. That goal is in part achieved by rectifying the 'disparity in resources and expertise of . . . individuals and their government.' " *Oguachuba*, 706 F.2d at 98-99, 1980 U.S.Code Cong.

As for <u>Phillips</u>, as noted, that case primarily involved the determination as to the scope of the

& Ad.News at 4984.

<u>Quade</u>, 570 F.Supp.2d at 1178. The undersigned, however, finds the district court's reasoning here unpersuasive. First, the Second Circuit in <u>Oguachuba</u> discussed the policy differences between the two statutes solely for the purpose of pointing out that, unlike under 42 U.S.C. § 1988, a court may deny an award of attorney fees under the EAJA if there are "special circumstances" making such an award unjust:

> The EAJA was intended to "remove an obstacle to contesting unreasonable governmental action through litigation." *Goldhaber v. Foley*, 698 F.2d 193, 197 (3rd Cir.1983). Thus, counsel fees may be awarded to parties prevailing against the government unless the government's position is "substantially justified," or "special circumstances make an award unjust." . . .

> In elaborating upon the "special circumstances" exception, the House Report accompanying the EAJA concluded,

>> Furthermore, the Government should not be held liable where special circumstances would make an award unjust. This "safety valve" helps to insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts. *It also gives the court discretion to deny awards where equitable considerations dictate an award should not be made.*

> H.R.Rep. No. 1418, 96th Cong., 2d Sess. at 11, *reprinted in* 1980 U.S.Code Cong. & Ad.News, 4953, 4984, 4990 (emphasis added). The EAJA thus explicitly directs a court to apply traditional equitable principles in ruling upon an application for counsel fees by a prevailing party.

> The EAJA differs from other statutes, such as the Sherman Act and Civil Rights legislation, which authorize an award of counsel fees to a party prevailing on claims arising under the particular legislation. Awards pursuant to such legislation are usually the result of Congress' perception of the importance of the underlying statutory policies, of the need to encourage litigation as a means of enforcement of those policies or of a desire to see that the damages awarded plaintiffs in such cases are not diminished by the need to pay counsel. The EAJA differs in that it is not tied to particular governmental policies but applies generally to civil litigation involving the government. The purpose of the EAJA is not to enhance enforcement of affirmative governmental policies but to deter the government from bringing unfounded suits or engaging in arbitrary or unjust administrative behavior. That goal is in part achieved by rectifying the "disparity in resources and expertise of ... individuals and their government." *Id.* at 6, 1980 U.S.Code Cong. & Ad.News at 4984. . . .

<u>Oguachuba</u>, 706 F.2d at 98. The Second Circuit thus was not pointing out how policy difference to show why, unlike in the civil rights context, fee awards made pursuant to the EAJA should be made directly to the prevailing party's attorney, but rather why, in some circumstances where the action of the government is substantially justified, an award of attorney fees under that statute may be denied. <u>See id.</u> at 99 ("In viewing applications for such awards in the context of general equitable principles, we are not required to limit our scrutiny to a single action or claim on which the applicant succeeded but must view the application in light of all the circumstances. The statutory purpose of determining unreasonable behavior by the government, for example, does not dictate an automatic award of counsel fees to a persistent litigant who happens to prevail as to one claim among many others which are meritless.").

The <u>Quade</u> court's fear that "[p]oor policy could result" if section 1988 and the EAJA "are interpreted in the same way with respect to payment of attorney fees," therefore, is unfounded. 570 F.Supp.2d at 1178. Indeed, the primary purpose of section 1988 is "to make sure that competent counsel" is "available to civil rights plaintiffs." <u>Adkinson</u>, 256 F.Supp.2d at 1317; <u>see also Venegas</u>, 495 U.S. at 86 ("The aim of . . . section [1983] . . . is to enable civil rights plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail."); <u>Evans</u>, 475 U.S. at 731 ("Congress expected fee shifting to attract competent counsel to represent citizens deprived of their civil rights."). This purpose is substantially similar to the EAJA's purpose of deterring the government from engaging in unreasonable action, by "rectifying 'the disparity between the resources and expenditure of . . . individuals and their government,'" through "'an award of [attorney] fees to the prevailing party.'" <u>Panola Land Buy8ing Ass'n</u>, 844 F.2d at 1510 (citations omitted); <u>see also Manning</u>, 510 F.3d at 1253 ("[T]he purpose of the fee award is to allow a claimant to present her claims without having to bear the cost of litigation."). At least one circuit court, furthermore, has found the "analysis and holding" of <u>Gilbrook</u> to be "equally applicable" in EAJA cases. <u>Manning</u>, 510 F.3d at 1252.

"fees and other expenses . . . *incurred* by" the prevailing party, to which the attorney representing that party may be entitled under the EAJA. 924 F.2d at 1582 (emphasis in original). Specifically, the Federal Circuit held that:

> As the statute requires, any fee award is made to the "prevailing party," not the attorney. Thus, [the plaintiff's] attorney could not directly claim or be entitled to the award. It had to be requested on behalf of the party. With this predicate, we construe the fee arrangement between [the plaintiff] and her attorney to mean that if an award of attorney fees is obtained on her behalf she is obligated to turn it over to her attorney. In this sense, [the plaintiff] incurs the attorney fees that may be awarded her. On the other hand, if no fee award is made to her, she does not have any obligation to pay any further fees to her attorney from her own resources. Inherent in the agreement is an intention on the part of [the plaintiff] to be obligated to her counsel for fees properly obtainable under the statute. . . .
>
> . . . [T]o be "incurred" within the meaning of a fee shifting statute, there must also be an express or implied agreement that the fee award will be paid over to the legal representative. The statute does not contemplate that a fee award may be made to a party to be retained. Thus, we have held in an analogous situation that a party acting pro se is not entitled to an attorney fee award. We therefore conclude that [the plaintiff] incurred attorney fees within the meaning of the EAJA only in such amount as may be awarded to her. . . .

Id. at 1582-83 (internal citations omitted) (emphasis added). Phillips thus not only is distinguishable on its facts, but it also supports the view that a fee award under the EAJA is to go directly to the prevailing party, not to that party's attorney.

In Williams, the New Jersey district court accused those courts that applied "the plain meaning of" the statutory language, of having ignored the "less often cited, but equally important principle of statutory construction which holds that when the literal application of statutory language would either produce an outcome demonstrably at odds with the statute's purpose or would result in an absurd outcome, courts are entitled to look beyond the plain meaning of" that language."[12] 549 F.Supp.2d at 616. The district court

---

[12]Another district court also pointed to the ability of courts to "consider how a federal agency" has "interpreted the law prior to litigation." Quade, 570 F.Supp.2d at 1174 ("A long-continued practical interpretation of a statute by an administrative agency is influential in interpreting a statute.") (citing International Brotherhood of Teamsters, Chauffers, Warehousemen and Helpers of America v. Daniel, 439 U.S. 551, 566 n. 20 (1979) ("It is commonplace in our jurisprudence that an administrative agency's consistent, longstanding interpretation of the statute under which it operates is entitled to considerable weight.")). It further noted that "when the agency adopts a conflicting position to its earlier position, the court is less bound to defer to the agency's new conflicting interpretation." 570 F.Supp.2d at 1174 (citing Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 417 (1993)). The Quade court thus discounted the government's objection to, and recent change in its policy of, "the payment of attorney's fees directly to attorneys," given that it had "historically paid attorneys directly when those attorneys requested direct payment of" such fees, and that the Social Security Administration had paid them "to attorneys directly so frequently that it had an electronic deposit system set up, for which attorneys could register." Id. But, as the Supreme Court in Daniel itself noted, "[t]his deference [to an agency's prior long-continued practical interpretation of a statute] is constrained by" a court's "obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history." 439 U.S. at 566 n. 20. As discussed herein, the purpose, history and plain language of the EAJA all point to an interpretation thereof requiring the award and payment of attorney fees, costs and expenses directly to the "prevailing party," e.g., the successful disability claimant, and not that party's attorney.

then declared that "[t]he literal application of § 2412(d)(1)(A) . . . undeniably leads to bizarre and absurd results," and that "[p]aying fees directly to the applicant necessarily frustrates the obvious purpose of the EAJA." Id. at 616-17. It went on to reason that "'awarding attorneys fees directly to a prevailing plaintiff runs the troubling risk that attorneys representing Social Security claimants will not be fully or consistently paid for their efforts, thus weakening the ability of such claimants to obtain qualified counsel – one of the EAJA's foremost goals.'" Id. at 617 n.5 (quoting Hogan v. Astrue, 539 F.Supp.2d 680, 683 (W.D.N.Y. 2008))[13]. The court continued:

> The inescapable effect . . . will be a reduction in fees collectable by the social security bar, which will inevitably lead to a decline in representation of plaintiffs in social security cases. The economics are simple: "if attorneys aren't paid EAJA fees directly they [will] have no economic motivation to accept District Court work on behalf of Social Security claimants." The reality is that "attorneys will simply refuse to take social security cases because of the likelihood of not getting paid."
>
> The *Manning* court dismissed this concern as "purely speculative," but the reality of Social Security litigation is common knowledge and hardly "speculative." Social Security applicants appealing the denial of disability insurance benefits regularly need the assistance of an attorney in order to navigate the complicated and often nuanced appeals process. The administrative regulations governing appeals are technical and the district court's standard of review is a delicate balance of deference and attention to detail. The purpose of the EAJA is to provide individuals . . . with an attorney in order to guide them through this process. The EAJA accomplishes this goal by promising to pay the attorney's fees of the Social Security applicants who successfully appeal the denial of disability insurance benefits.
>
> Unlike plaintiffs in most legal actions, "Social Security claimants [generally] do not pay their attorney's fees upfront. Therefore, in the Social Security context, an EAJA award serves as *payment* to the attorney, rather than reimbursement of the client. As a Social Security practitioner's guide explains:
>
>> Attorneys representing plaintiffs in Social Security cases are generally not first paid by their clients, and the clients do not then seek reimbursement from the government. Many attorneys do not seek fees out of their clients['] past due benefits [as permitted by 42 U.S.C. § 406(b) ], and instead rely solely on EAJA fees for payment of their fees . . . [A]ttorneys generally receive only the EAJA fee for their work representing the client in federal court. *This fee is not reimbursement to the client, but rather, payment to the attorney.*

Id. at 617-18 (internal citations omitted) (emphasis in original). The Williams court expressed two other concerns it felt warranted looking beyond the plain language of the EAJA:

> Because the attorneys who represent Social Security claimants are relying on EAJA fees as payment for their services, ordering that funds be paid directly to the Social

---

[13]Despite sharing these same "concerns", the district court in Hogan nevertheless deferred "to the bulk of those cases" which had "addressed the issue," and concluded that "EAJA attorney fee awards properly belong to the prevailing party, and should be made directly payable to the successful claimant." 539 F.Supp.2d at 683-84.

Security claimant materially increases the chances that attorneys will not be paid for their services. The reason is two-fold. First, Social Security applicants are often in reduced financial situations and may decide that an EAJA fee award is better spent on rent rather than paying the attorney who earned the fee. Second, if EAJA fees are paid directly to the applicant, then they are subject to seizure by the federal government as "administrative offsets" under the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3716, to satisfy outstanding debts.

The Debt Collection Improvement Act authorizes the Department of the Treasury's Financial Management Service to collect non-tax debts owed to the federal government by offsetting payments made to the debtor by other federal agencies. The only federal payments that are not subject to offsets are those specifically listed, and an EAJA fee award is not included in the list of payments that are excluded from offset.

Technology has enabled the federal government "to electronically match the prevailing Social Security claimants with those persons owing debts recoverable under the [Debt Collection Improvement] Act." Several courts have permitted administrative offsets to be taken from EAJA fee awards paid directly to the Social Security applicant. Offsets reduce the fees available, thereby discounting the value of the attorney's service.

Logically, if the EAJA fees – the only reliable source of payment for attorneys representing Social Security applicants – are reduced by administrative offsets or are not forwarded to the attorney by the client, then attorneys will stop accepting Social Security cases. When attorneys stop taking cases, then the purpose of the EAJA cannot be fulfilled. A "Social Security plaintiff's ability to challenge unreasonable government action is inextricably tied to his or her ability to retain competent counsel" and "[k]ey to retention of counsel is an assurance that if successful, counsel [will] receive fees for his or her work."

Id. at 618-19 (internal citations and footnotes omitted); see also Quade, 570 F.Supp.2d at 1171-72; Vargas v. Commissioner of Social Security, 2008 WL 699581 *7-*8 (D.N.J. 2008)[14].

The policy concerns voiced by the Williams court as reasons for looking beyond what it described as "a narrow, literal application of the statutory text," however, are neither persuasive nor do they form an

---

[14]The New Jersey district court in Vargas described its concerns this way:

If an individual can eradicate a debt out of funds other than her own benefits by promptly assenting to an offset against an EAJA award, why wouldn't she do that? Once notified of a claim asserted by a government agency to be paid out of the EAJA award, executing a consent and waiver makes perfectly good sense if the money would otherwise be earmarked for the attorney. Paying with someone else's money is a boon. And there is no consequence to a consent and waiver it can't be seriously argued that the client in a Social Security case, who is usually granted IFP status, has other funds available to pay counsel. An offset against the EAJA award, therefore, puts the client's interests squarely in conflict with her lawyer's interest in getting paid.

And it streamlines the process of collection dramatically. The government has a strong incentive to go after EAJA funds knowing that the recipient of an EAJA award will readily waive further process. A creditor agency gets paid faster and avoids the tangle of notice requirements and payout agreements (such as might be required if the debtor's assets was, for example, the stream of benefits payable by the Commissioner as the result of a successful appeal). Meanwhile the intended recipient, the claimant's lawyer who won the case and has the biggest incentive to fight, is relatively helpless.

Id.

appropriate basis for ignoring the plain language of the EAJA. 549 F.Supp.2d at 619. First, it should be noted that the primary case on which that court relied, Stephens v. Astrue, 539 F.Supp.2d 802 (D.Md. 2008), was expressly overruled by the Fourth Circuit, which, as discussed above, held that an award of attorney's fees under the EAJA goes to the prevailing party, not the attorney. See Stephens, 565 F.3d at 140. In addition, the undersigned agrees with Manning that the concerns expressed by the New Jersey district court, although certainly not without any foundation in reality, nevertheless are still "speculative". 510 F.3d at 1254. As the Tenth Circuit further noted:

> . . . [T]he Supreme Court addressed and rejected a similar argument:

>> We are cognizant of the possibility that decisions by individual clients to bargain away fee awards may, in the aggregate and in the long run, diminish lawyers' expectations of statutory fees in civil rights cases. If this occurred, the pool of lawyers willing to represent plaintiffs in such cases might shrink, constricting the "effective assess [sic] to the judicial process" . . . We believe, however, that as a practical matter the likelihood of this circumstance arising is remote.

Id. (quoting Evans, 475 U.S. at 741 n. 34 (discussing the fee-shifting provision in § 1988)).

Neither the concern that there may be "a risk that individuals who owe debts subject to offset by the government may ultimately have a more difficult time paying the bill for litigation," furthermore, nor "Congress's general statements of findings and purpose," may be used "to override the plain meaning of specific provisions of the" EAJA. Reeves, 526 F.3d at 737; see also Manning, 510 F.3d at 1555 (noting as well that while it seems counter intuitive to hold that fee award does not go to attorney, since EAJA fees are calculated based on time spent by and hourly rate of attorney, courts are bound by statutory language, legislative history and case law); McCarty, 505 F.Supp.2d at 630 ("Assuming arguendo that granting fees and costs directly to the prevailing party will result in attorneys receiving less than full compensation, this concern does not outweigh the mandatory language of the statute granting the attorney's fees directly to the prevailing party.") (citing Panola, 844 F.2d at 1511).[15]

---

[15]The Eighth Circuit, on the other hand, has held that "EAJA attorneys' fees are awarded to prevailing parties' attorneys," and therefore those parties' attorneys have "standing to bring an independent action to collect the fees," and the government cannot withhold the fee awards to cover the prevailing parties' debts. Ratliff v. Astrue, 540 F.3d 800, 802 (8th Cir. 2008). However, the determination in Ratliff that such fees are awarded to the prevailing party's attorney, was based solely "on controlling Eighth Circuit precedent." Id. at 801. That precedent consists of two cases. In one case, the Eighth Circuit "held that EAJA attorneys are entitled to fees awards," and thus those awards "could not be recovered by a third-party judgment creditor of the plaintiff," including the government. Ratliff, 540 F.3d at 802 (citing Curtis v. City of Des Moines, 995 F.2d 125, 129 (8th Cir. 1993)). In the other case, the matter was remanded to the bankruptcy court "to 'determine whether attorneys' fees can be awarded' under the Internal Revenue Code and, if so," that court was directed to assess them "'affirmatively against the [government], and not as an offset against its tax claim.'" Id. (quoting United States v. McPeck, 910 F.2d 509, 514 (8th Cir. 1990)). The Eighth Circuit in Ratliff also cited the

Nor does interpreting the term "prevailing party" to mean "the prevailing party itself" and not that party's attorney in accordance with the EAJA's plain statutory language, invoke the "absurdity doctrine," which requires that the application of the "proposed interpretation" thereof to be "so gross as to shock the general moral or common sense." McCarty, 505 F.Supp.2d at 631 (citing Newsome, 898 F.2d at 121 n.3). Essentially the Williams and those other courts that have invoked the absurdity doctrine have based their opposition to payment of EAJA awards directly to the prevailing party on policy grounds. The Williams court, as noted above, found interpreting the statute in this way would reduce the amount of compensation Social Security attorneys would receive, which in turn would reduce their incentives to represent disability claimants, which then would result in attorneys taking fewer such cases, thereby defeating the purpose of the statute. Id. at 616-19; see also McMahon, 617 F.Supp.2d at 877-78; Quade, 570 F.Supp.2d at 1171-72 (EAJA interpretation that would entitle prevailing party to receipt of fee award, would frustrate statute's remedial purpose, thwart its legislative purpose, accord prevailing party unintended

---

Fifth Circuit's decision in Marré, discussed elsewhere herein, and rejected as being of limited value in this case.

In light of its stated reliance on the above Eighth Circuit precedent, though, Ratliff lacks any real applicability outside that circuit. In Curtis – which in fact was a section 1988 case, and which, interestingly, makes no direct mention of the government as being a third-party creditor – the Eighth Circuit based its determination on "[t]he clear Congressional intent and purpose of § 1988" of encouraging "attorneys to prosecute constitutional violations." 995 F.2d at 129. As explained elsewhere herein, however, that legislative purpose is substantially similar to the EAJA's (i.e., encouraging attorneys to represent parties in challenging unreasonable government action), and the large majority of courts have found the prevailing party language in section 1988 (which those courts also have found should be interpreted consistently with other fee-shifting statutes, such as the EAJA) requires that the award of attorney fees made thereunder should go to the prevailing party, not that party's attorney.

Indeed, the Eighth Circuit specifically recognized this by noting the many courts which came to the opposite conclusion than it did in Ratliff, admitting that "[w]ere we deciding this case in the first instance, we may well agree with our sister circuits and be persuaded by a literal interpretation of the EAJA, providing that 'a court may award reasonable fees and expenses of attorneys . . . to the prevailing party.'" 540 F.3d at 802 (quoting 28 U.S.C. § 2412(b)) (emphasis added by court of appeals). In a well-written concurring opinion, Judge Gruender also noted that while the Eighth Circuit was bound by its prior holding in Curtis, Ratliff was "inconsistent with language in two Supreme Court opinions [Evans and Venegas], the EAJA's plain language, and the holdings of most other circuit courts." Id. at 802-05. In addition, like Judge Gruender, the undersigned is "not convinced" McPeck "compels the conclusion" reached by the Eighth Circuit in Ratliff:

. . . McPeck recognizes that "[w]hen a statute awards attorneys' fees to a party, the award belongs to the party, not the attorney representing the party." 910 F.2d at 513. In remanding the case for the district court to determine whether the attorney's fees could be awarded pursuant to the Internal Revenue Code, rather than the Bankruptcy Code, the court stated that, "[i]f so, the award of attorneys' fees should be assessed affirmatively against the IRS, and not as an offset against its tax claim." 910 F.2d at 514. However, in the context of that bankruptcy case, it is not at all clear . . . that the court's statement implied that the fees are to be awarded directly to the attorneys and not to the party or the bankruptcy estate. In addition, McPeck did not involve attorney's fees awarded under either the EAJA or § 1988. Moreover, because this statement is not necessary to the outcome, . . . it is dicta.

Ratliff, 540 F.3d at 803 n. 1. Accordingly, in light of the foregoing discussion, the undersigned finds the Eighth Circuit's holding in Ratliff to be unpersuasive here.

windelfall, and produce illogical results).[16]

[16]As stated in relevant part by the Arizona district court in McMahon:

. . . [A]warding EAJA fees to the plaintiff rather than his counsel, would frustrate the EAJA's purpose. The purpose of the EAJA is to allow impoverished litigants to challenge adverse governmental actions, which is accomplished by allowing successful litigants to recover attorney's fees, thus diminishing a powerful disincentive to mounting such challenges.

However, . . . if EAJA attorney's fees are directed to the plaintiff and not his attorney, then the fees would be subject to administrative offset of the plaintiff's generalized federal debts pursuant to 31 C.F.R. § 285.5(e)(5). If that is the case, then that result is entirely inconsistent with the EAJA's purpose of attracting competent counsel to represent impoverished litigants. Indeed, administrative offset of EAJA attorney fee awards would in effect reduce social security attorneys to unsecured creditors of impoverished litigants. . . .

617 F.Supp.2d at 877 (internal citations omitted). In Quade, the district court further noted in relevant part as follows:

Absurd results are a reality in cases where courts read the plain meaning of § 2412(d)(1)(A) to require the payment of attorney's fees to the actual party rather than that party's attorney. Under such a practice, the actual party receives the award of attorney's fees and before that award can be paid from the party to the attorney, the award is subject to offset for any debts the party may owe the government. In fact, since the government began contesting direct payment to attorneys as part of a policy change last summer, a number of attorneys have lost their earned fees to the debts of their clients.

. . .

Taking awards of attorney's fees to offset the debts of attorneys' clients seems an absurd interpretation of a statute meant to encourage attorney representation in cases where the government's resources significantly outweigh the individual's resources. . . . [S]uch a result is "counter-intuitive." Such an illogical result is inconsistent with the purposes and policies of the EAJA.

. . .

The Supreme Court has expressed concern about a chilling effect on a claimant's ability to obtain representation when there is a great likelihood that an attorney will not be paid for work the attorney performed. . . . [N]ot paying an attorney the award of attorney's fees directly may result in a chilling of the claimant's ability to obtain representation. . . .

. . . [T]he likelihood of a chilling effect . . . is a real result in social security disability cases. As evidenced from the numerous cases in which awards of attorney's fees have already been used to pay the debts of clients, attorneys are losing their earned fees. This is predictable in the social security benefits context. Plaintiffs are disabled people, unable to pursue gainful employment and frequently in distressed financial circumstances. This is exacerbated by the years it takes to pursue a claim through both the administrative process as well as the court process. Moreover, . . . the fee award is usually quite modest . . . The potential for an entire fee award to be offset in the Social Security context is great given both the modest means of many claimants and the relatively small fee awards in the typical cases.

This is an absurd result that thwarts the purpose of the EAJA. . . .

570 F.Supp.2d at 1171-73 (finding also that if fees earned by attorneys are paid to claimants who have debts, both government and claimants would receive unintended windfalls; claimants would get benefit of their debts being paid and government would secure payment of monies owed to it) (internal citations omitted); see also Laosouvanh v. Astrue, 2009 WL 799122 *4 (E.D.Cal. 2009); Barber v. Astrue, 2008 WL 2705147 *7 (E.D.Cal. 2008); Armstrong v. Astrue, 2008 Wl 2705023 *3 (E.D.Cal. 2008); Garner v. Astrue, 2008 WL 2357409 *1 (W.D.N.Y. 2008).

REPORT AND RECOMMENDATION
Page - 22

As discussed above, however, "the structure of the" EAJA "demonstrates Congress did not intend all service providers," including attorneys who represent prevailing parties, "to become additional parties to the action for the purpose of asserting their claims for compensation." <u>Reeves</u>, 526 F.3d at 736. It also is "equally implausible," as noted by the Eleventh Circuit, that "Congress intended EAJA fees be awarded directly by the court to each service provider on an individual basis." <u>Id.</u> That is, while the district courts in <u>Williams</u>, <u>Quade</u> and <u>McMahon</u> focused their attention on the policy arguments behind ensuring that attorneys get paid, that policy, also as discussed above, was never intended to be the driving force behind fee awards under the EAJA. <u>See</u> <u>Stephens</u>, 565 F.3d at 138 (EAJA was not enacted for benefit of counsel to ensure that counsel gets paid); <u>Manning</u>, 510 F.3d at 1251.[17]

---

[17]The <u>Williams</u> court made another argument as to why attorney fee awards under the EAJA should be paid directly to the prevailing party's attorney. As discussed above, that court declined to find section 1988 jurisprudence interpreting the prevailing party language of that statute, shed any light on the issue of "who should receive EAJA fees, once they have been sought." 549 F.Supp.2d at 621. The New Jersey district court went on to provide yet another reason for making "[t]he distinction between who is the proper applicant for an EAJA award of attorney's fees and who is the proper recipient" thereof, noting with approval the Sixth Circuit's summary of that distinction:

> There, the Court of Appeals for the Sixth Circuit that "an attorney cannot bring an independent action for attorney's fees. However, the Court of Appeals continued, once attorney's fees have been awarded under the EAJA they "are payable to the attorney." The Court of Appeals clarified that, although EAJA fees "are awarded for the benefit of the party," the funds are "not the party's to keep." Cognizant of this distinction and motivated by the EAJA's purpose, the Court reads the EAJA as granting the right to apply for attorney's fees to the prevailing party, but finds that once fees have been awarded, they are payable to the attorney who earned them.

<u>Id.</u> (citing and quoting <u>King v. Commissioner ov Social Security</u>, 230 Fed.Appx. 476, 481 (6th Cir. 2007)) (internal citations omitted).

<u>King</u>, however, concerned the issue of whether the prevailing party's attorney was applying for an award of attorney fees under the EAJA on her own behalf, rather than on behalf of the party. The district court in that case had denied the motion for attorney fees "on the basis that" the attorney "was applying for an award of such fees on her own behalf." <u>Id.</u> at 477-78. In reversing the district court's decision, the Sixth Circuit first noted that the prevailing party's attorney "'could not directly claim or be entitled to the award,'" but rather "'[i]t had to be requested *on behalf of the party.*'" <u>Id.</u> at 481 (quoting <u>Phillips</u>, 924 F.2d at 1582) (emphasis added by Sixth Circuit). In explaining "the relevance of the words 'award to a prevailing party'" in the EAJA, the Sixth Circuit then stated in relevant part as follows:

> . . . [A] party cannot request an award of attorney's fees unless he is required to pay those fees to his attorney. As the *Phillips* court explained,
>
> > To be "incurred" within the meaning of a fee shifting statute, *there must also be an express or implied agreement that the fee award will be paid over to the legal representative.* The statute does not contemplate that a fee award may be made to a party to be retained. Thus, we have held in an analogous situation that a party acting *pro se* is not entitled to an attorney fee award.
>
> *Id.* at 1583 (emphasis added). Thus, . . . an attorney cannot bring an independent action for attorney's fees. However, attorney's fees awarded under the EAJA are payable to the attorney; they are awarded for the benefit of the party, but the money is not the party's to keep.

There are other just as important policy arguments, furthermore, for paying such awards directly to the prevailing parties, rather than their attorneys. Successive fee claims, as well as conflicts of interest in the attorney-client relationship, for example, are just two such policy concerns Congress may have had in mind when it enacted the EAJA. As noted by the Eleventh Circuit:

> Had Congress provided attorneys a right to claim fees independent of the right of the prevailing party, the courts would have been obligated to entertain successive claims for fees when one lawyer for the prevailing party succeeds another in the litigation. Not only might more than one award have been required, but contests between successive lawyers for the same party could have developed over questions regarding which lawyer performed particular services for the prevailing party.
>
> Further, if clients and their lawyers had independent entitlements in the same action, conflicts of interest between attorney and client would develop. Historically, the client and the lawyer make their fee arrangement, and the lawyer looks to the client for payment of the legal fee. The lawyer represents and advises, but the client controls the litigation. In enacting the EAJA, Congress recognized and maintained the attorney-client relationship as it has existed throughout our history.

Panola Land Buying Ass'n, 844 F.2d at 1511 (internal footnote omitted).[18] In essence, the assertion by the above district courts that "attorneys are the real party in interest for the award of attorney's fees" under the EAJA is, as observed by the Fourth Circuit, "a call to common sense." Stephens, 565 F.3d at 139.

As the Fourth Circuit went on to note, however, although "at first blush, 'it seems counter intuitive to hold that an award of attorney's fees does not go to the attorney,'" not only, as discussed above, must the courts "presume" that Congress "says in a statute what it means and means in a statute what it says there," but also:

Id. This language, though, merely stands for the proposition that an award of attorney fees under the EAJA may only be granted in those situations where the prevailing party actually incurred such fees as the result of legal representation. Thus, a *pro se* plaintiff is not entitled to such an award, as no attorney fees are actually incurred. In addition, while the Sixth Circuit did, as just noted, state that fees awarded under the EAJA "are payable to the attorney," it made no actual determination as to whether those fees must or should be directly paid thereto. See id. at 482 ("[A]ttorney fee awards are necessarily payable to the attorney either directly or through the hands of the prevailing party.") (emphasis added).

Indeed, as discussed above, Phillips itself solely was concerned with determining the amount of attorney fees incurred within the scope of the fee agreement between the prevailing party in that case and her attorney. 924 F.2d at 1582-83. Phillips, therefore, does not support the proposition that EAJA fee awards should be paid directly to the prevailing party's attorney, but rather appears to contemplate the opposite. See id. ("[W]e construe the fee arrangement between Phillips and her attorney to mean that if an award of attorney fees is obtained on her behalf she is obligated to turn it over to her attorney."). Accordingly, although King may leave open the possibility of allowing direct payment of an EAJA fee award to attorneys for prevailing parties at least in the Sixth Circuit, for the reasons discussed herein – including the plain statutory text, public policy and the legislative history behind the EAJA – the undersigned finds direct payment to the prevailing party, rather than to that party's attorney, is the more appropriate reading of the statute.

[18]But see Vargas, 2008 WL 699581 at *7 ("An offset against the EAJA award . . . puts the client's interests squarely in conflict with her layer's interest in getting paid.").

. . . Congress may well have had reason for awarding fees directly to the prevailing party and not the attorney. As noted, "attorney's fees" are lumped together with a variety of "fees and other expenses" under the EAJA. Presumably, if attorney's fees are directly payable to the attorneys, so are these other fees. Congress could rightly have desired to avoid such a result, which would leave a court ordering payments to a variety of parties and individuals in every case involving the EAJA.

Id. at 139-40 (quoting Manning, 510 F.3d at 1255). Further, "the real problem" – at least in terms of the ability of attorneys for prevailing parties to get paid – "lies with the Debt Collection Improvement Act, not the EAJA." Id. at 140 ("Prior to the implementation of that statute, our answer to the question posed in this case would have had no real practical impact."). In addition, while "allowing the government to use statutory offsets to reduce its EAJA payments may frustrate [the] EAJA's purpose," it also is "equally true that such practices serve the purposes of those statutory offsets: to allow the federal government to collect debts owed to it." Chonko, 2008 WL 1809188 at *8.

Accordingly, the Fourth Circuit rightly concluded in Stephens that it improperly was being asked to adopt a function reserved to Congress:

In sum, [the plaintiff] asks us to "improve the statute – to amend it, really." We cannot do that, however, "without trespassing on a function reserved for the legislative branch." Thus, while we may be sympathetic to the concerns raised by [the plaintiff], sympathy does not permit us to ignore the plain language of the statute.

565 F.3d at 140 (internal citations omitted); see also Reeves, 526 F.3d at 738 ("[P]olicy decisions are properly left to Congress . . . '[w]hatever merits . . . policy arguments may have, it is not the province of [the courts] to rewrite the statute to accommodate them.'") (quoting Artuz, 531 U.S. at 10); Panola, 844 F.2d at 1514 ("It is for Congress to consider any revision to the EAJA or to otherwise address what the . . . attorney . . . see[s] as a serious problem. This court can no more formulate a solution, which it is implored to do in this case, than it can appropriate the funds necessary to effectuate a solution.").

This Court too would be inappropriately trespassing on Congress's purview were it to ignore the plain language of the EAJA as well. As did the New Jersey district court in Chonko, the undersigned also "sees no reason" here "to prefer a policy of encouraging meritorious litigation over a policy of collecting government debts." 2008 WL 1809188 at *8. Indeed, as that court went on to aptly observe, it is the very "indeterminacy of" the analysis regarding the legislative purpose behind the EAJA, that "further reinforces the Court's reliance on the" plain language of the statutory text. Id. Accordingly, as the District Court for the Western District of New York found:

. . . EAJA attorney fee awards properly belong to the prevailing party, and should be

> made directly payable to the successful [disability] claimant, with the expectation that he will abide by his obligations with respect to any applicable laws, such as the Debt Collection Improvement Act, as well as his obligations to his attorney pursuant to the terms of their underlying fee arrangement.

Hogan, 539 F.Supp.2d at 684; see also Shinn, 2008 WL 2073980 at *7 (prevailing party who receives fee award, and who has entered into contingency attorney fee agreement, is expected to abide by agreement's terms).

Thus, while, as discussed above, there may be a very real risk that attorneys may not receive their full compensation by interpreting the EAJA to require fees, costs and expenses awarded thereunder to be paid directly to the prevailing disability claimant, and while allowing offsets thereof by the government to at least some extent may frustrate the purpose of the EAJA, the actions of Congress – as reflected in the plain language and structure of the statutory provisions and legislative history and purposes at issue here – require the Court to so hold here. Plaintiff argues that the case law cited by defendant in support of his position (i.e., Stephens, Reeves and Manning) not only are from other circuits, but were wrongly decided. However, plaintiff utterly fails to provide any legal or factual support for his contention that these three cases were incorrectly determined.

As discussed above, though, not only do those decisions comport with both the plain language of the EAJA and the legislative history and policies behind that statute, but they are consistent with the large majority of other cases, both district and circuit court, that have addressed the issue of how to interpret the term "prevailing party." The fact that these, and the other cases discussed above, are from other circuits, furthermore, does not make their legal reasoning any less valid, although the undersigned recognizes that reasoning is not binding precedent. Indeed, plaintiff points to no Ninth Circuit precedent that contradicts the reasoning contained therein. In addition, the only Ninth Circuit case to shed any light as how it might approach this issue, indicates it would be supportive thereof. See Lozano v. Astrue, 2008 WL 5875573 *1 (9th Cir. 2008) (noting that it previously had denied claimant's request to award EAJA attorney's fees and expenses directly to claimant's counsel, citing to Reeves); see also 2008 WL 5875572 *1 (9th Cir. 2008) (denying said request as indicated).

## CONCLUSION

After reviewing the facts and the balance of the record, and for the reasons set forth above in this report and recommendation, the undersigned recommends that the Court award the attorney's fees, costs

and expenses sought in plaintiff's motion therefor to plaintiff – subject to any amendment thereof agreed on by the parties and approved by the Court for additional time plaintiff's counsel was required to spend responding to defendant's opposition to plaintiff's motion – but order that those fees, costs and expenses be made payable, and mailed directly, to plaintiff's counsel.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **October 16, 2009**, as noted in the caption.

DATED this 23rd day of September, 2009.


Karen L. Strombom
United States Magistrate Judge